UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -v-                           Case No. 6:24-MJ-04013 (MWP)

DONDE LINDSAY,

                       Defendant.

## DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING GOVERNMENT'S MOTION TO STAY DECISION DENYING <u>DETENTION</u>

On June 25, 2024, this Court denied the government's motion for detention, but granted the government's oral motion to stay the Court's decision until June 27, to allow the government time to move for revocation of this Court's release order before the District Judge. The government's motion for a stay failed to cite any legal authority in support of its application, nor did it identify any legal authority in the Bail Reform Act (or otherwise) granting this Court the power to stay its decision in this situation. Because the neither the Bail Reform Act, the inherent powers possessed by this Court, nor the rules for issuance of a stay in the civil context, support granting the government's motion in this instance, Mr. Lindsay moves this Court to reconsider and deny the government's motion.

## I.    The Bail Reform Act does not authorize the stay of a release order.

The Bail Reform Act ("BRA") carefully balances the need for the government to develop evidence to support its case for detention against the presumptively

innocent defendant's right to liberty. However, the BRA contains no explicit grant of authority for a court to stay its own decision to permit the government time to move for revocation of the release order.

The procedure outlined under the BRA for the determination of detention motions is well established. The BRA requires the government to make a preliminary showing before a person can be temporarily detained pending a detention hearing. 18 U.S.C. § 3142(f). Then, even if temporary detention is authorized, the government cannot receive a continuance for more than three days. *See* § 3142(f) (noting that the detention hearing "shall be held immediately upon the person's first appearance" unless a continuance is requested; absent good cause, a government continuance "may not exceed three days"). At that point, a detention hearing must be held. Then, if conditions of release can be crafted, the magistrate judge presiding over the detention hearing "shall order the release of the person." § 3142 (c) (1).

A magistrate judge's release order is just that: an order. It is not a recommendation to the district judge. It is a legal order with the full force and effect of law issued pursuant to a Congressional directive that the judicial officer "shall order the pretrial release of the person" absent a specific factual finding set out in the BRA. § 3142(c)(1). The canons of statutory interpretation support. In a discussion of statutory interpretation, the Supreme Court has posited that "[a]fter all, only the words on the page constitute the law adopted by Congress and approved by the President," and that interpretations to the contrary "risk amending statutes outside

the legislative process reserved for the people's representatives." *Bostock v. Clayton County*, 590 U.S. 644, 654-655 (2020).

To be sure, the government can get a *de novo* hearing on the issue before district judge, but nothing in the BRA provides for a stay of a release order while the government prepares to take its second bite at the apple. Under the BRA, the government can ensure that a defendant is detained for three days. But after that, a person must be released if the government fails to make the requisite showing as to dangerousness or flight.

Here, the BRA's procedure was followed. On the government's motion, Mr. Lindsay was ordered detained at his initial appearance on January 22, 2024. ECF No. 4. Upon the request of Mr. Lindsay's former counsel, the detention hearing scheduled for January 29, 2024 was converted to a status hearing. ECF No. 41. A status hearing was scheduled and held on March 5, 2024, and a detention hearing was held on March 19, 2024. ECF Nos. 69, 76. This Court reserved decision on the government's motion and scheduled a status conference for April 4, 2024. ECF No. 76. The status hearing was held on April 4, 2024 and former counsel was relieved. ECF No. 84. Undersigned counsel was appointed and appeared with Mr. Lindsay for an attorney appointment hearing on April 10. ECF No. 85. At that hearing, this Court granted counsel leave to reopen the detention hearing held on April 10. *Id*. The reopened detention hearing was scheduled for April 23. *Id*. Counsel requested and was granted an adjournment of the detention hearing to May 8. ECF No. 94. Counsel

then requested and was granted a second adjournment of the reopened detention hearing to June 17. ECF No. 105.

The detention hearing was held on June 17. ECF No. 127. This Court reserved its decision and continued the hearing to June 21. ECF No. 130. The continued hearing was held on June 21 and continued to June 25 for the Court to investigate whether Mr. Lindsay could be released on the condition that he enter a residential program offered by the Salvation Army. ECF No. 130. On June 25, after finding that Mr. Lindsay had been accepted into the Salvation Army program, the Court issued a decision denying the government's detention motion. The government, without citing any authority in the BRA, then moved for a stay of this Court's denial of the government's detention motion.

In sum, Mr. Lindsay points to the explicit absence in the BRA of any provisions: 1) allowing for stays of decisions on detention motions in general; and 2) creating a procedure for the government to move for stays in similar situations, as the decisive legal authority requiring denial of such motions. Simply put, although this procedure may be established local practice, there is no legal basis to support it. For this reason, we respectfully ask this Court to reconsider and deny the government's motion for a stay.

## II. This Court does not possess the inherent authority to stay a release order.

A court's use of "an inherent power must be a reasonable response to a specific problem and the power cannot contradict any express rule or statute." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). Here, as noted above, the BRA carefully

delineates the circumstances under which a presumptively innocent person can be detained by the government. Congress presumptively crafted the BRA to protect a defendant's due process rights, and the Supreme Court upheld this pretrial detention scheme under due process scrutiny in *United States v. Salerno*. 481 U.S. 739, 750 (1987). The government's request for a stay essentially asks this Court to use its inherent power to detain people for periods beyond those authorized under the statute without the BRA's requisite factual findings. However, in this circumstance, granting the government's request would be an unauthorized use of this Court's inherent power because it conflicts with the BRA. *See Dietz v. Bouldin*, 136 S. Ct. at 1892.

Moreover, by injecting into the BRA's carefully delineated balance additional judicial power to detain people pretrial, the government also creates significant due process concerns. If a court can order stays of this nature, detention hearings under the Bail Reform Act become illusory. Due process requires a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"). If the government can obtain stays of release orders without citing any legal authority and without making any factual showing under some discernable standard, the detention hearing before the magistrate judge becomes an opportunity to be heard in name only. Interpreting the BRA to allow release orders to be stayed upon a government motion with no specific factual showing would create a pretrial detention regime that violates due process. The Court should avoid interpreting the BRA and its inherent authority in this way to avoid

creating that constitutional concern and thereby preserve the validity of the BRA under *Salerno*. For this additional reason, Mr. Lindsay asks this Court to reconsider and deny the government's motion for a stay.

III.   **Assuming the Court possesses inherent authority to stay a release order, a stay is still not justified as the government has neither articulated the standards that govern nor made any factual showing to support its request.**

Even if this Court possesses the inherent authority to stay release orders, the Court should deny the government's motion for three reasons. First, if the release order continues to be stayed, no lawful order exists to mandate Mr. Lindsay's continued detention. The temporary detention order expressly limits its validity only until the detention hearing is held and the government's motion is decided. As such, a new order detaining Mr. Lindsay is required to result in his continued detention after the motion was decided in his favor. Neither the BRA nor any other statute provides the Court with a legal basis to issue an interim order of detention after denying the government's motion.

Second, assuming the Court can lawfully stay a release order under certain circumstances, the government should not be entitled to a stay as a matter of right. Stays in other contexts require strong factual showings and the balancing of the equities. *See Columbus Bd. of Ed. v. Penick*, 439 U.S. 1348, 1352 (1978) (noting that part of the "inquiry in gauging the appropriateness of a stay is the balance of equities"). In *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), the Supreme Court set out factors to govern whether an order releasing a state habeas petitioner can be stayed pending appeal. The Court looked both to the civil and appellate rules of

procedure and to the traditional standards governing stays of civil judgments. The
Court enumerated the following factors:

> (1) whether the stay applicant has made a strong showing that he is
> likely to succeed on the merits;
> (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure the other
> parties interested in the proceeding; and
> (4) where the public interest lies.

*Id*. The Supreme Court noted that these factors must be weighed against the detained
person's "always substantial." *Id*. at 777.  The factors that govern a stay here should
be even more exacting, as a habeas petitioner has at least enjoyed some process that
led to a state determination that his detention was legal. Presently, the only judicial
assessment of Mr. Lindsay's liberty interest resulted in a determination that
detention was not authorized. The government should have to make a strong showing
indeed for that release order to be stayed.

As the Supreme Court recently wrote, a "stay is an intrusion into the ordinary
processes of administration and judicial review and accordingly is not a matter of
right, even if irreparable injury might otherwise result to the appellant." *Nken v.
Holder*, 556 U.S. 418, 427 (2009) (internal citations and quotation marks omitted).
"The parties and the public, while entitled to both careful review and a meaningful
decision, are also generally entitled to the prompt execution of orders that the
legislature has made final." *Id*.

Here, the government did not address the statutory text, made no attempt to
address the factors set out in *Hilton v. Braunskill*—either why they should apply in
this different legal context or how they apply factually—and otherwise failed to

articulate a legal theory authorizing its proposed stay. This request for relief with no legal support should be denied.

## **<u>CONCLUSION</u>**

For these reasons, Mr. Lindsay respectfully moves this Court to reconsider its ruling and to deny the government's motion for stay of this Court's order denying the government's motion for detention.

DATED:      June 25, 2024                      Respectfully Submitted

                                                            /s/
                                                            John J. Gilsenan, Esq.
                                                            Counsel for Donde Lindsay
                                                            Osborn Reed & Burke LLP
                                                            120 Allens Creek Rd., Ste. 150
                                                            Rochester, NY 14618
                                                            (585) 210-8309
                                                            jjg@orblaw.com