```
                 UNITED STATES DISTRICT COURT

                 WESTERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA    )      24MJ4013
                            )
vs.
                                    Buffalo, New York
DONDE LINDSAY,              )       March 19, 2024
            Defendant.              3:30 p.m.
- - - - - - - - - - - - - - X
```

**DETENTION HEARING**
**Transcribed from an Electronic Recording Device**

```
                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE MARIAN W. PAYSON
                UNITED STATES MAGISTRATE JUDGE
```

**FOR PLAINTIFF:   ROBERT MARANGOLA, ESQ.**
                  Assistant United States Attorney
                  100 State Street
                  Rochester, New York 14614


**FOR DEFENDANT:   JOHN C. PUTNEY, ESQ.**
                  149 Main Street
                  P.O. Box 177
                  Dansville, New York 14437


                  K. Nenni, USPO
                  T. Zeller, USPO







**COURT REPORTER: Karen J. Clark, Official Court Reporter**
                 **Karenclark1013@AOL.com**
                 **100 State Street**
                 **Rochester, New York 14614**

```
 1                    USA V. D. LINDSAY
 2                  P R O C E E D I N G
                *           *           *
 3
 4
 5          THE CLERK:  United States of America versus
 6   Donde Lindsay, 24MJ4013
 7          MAGISTRATE JUDGE PAYSON:  Good afternoon.
 8          MR. MARANGOLA:  Good afternoon, your Honor.
 9          MAGISTRATE JUDGE PAYSON:  Both parties
10   prepared to proceed.
11          MR. MARANGOLA:  Yes, Judge.
12          MR. PUTNEY:  Your Honor, Mr. Lindsay told me
13   he would like to have a new attorney.  He doesn't want
14   to work with me anymore.
15          MAGISTRATE JUDGE PAYSON:  Mr. Marangola,
16   would you mind stepping outside.
17          MR. MARANGOLA:  No, Judge.
18          (Whereupon, AUSA Marangola exited the
19   courtroom.)
20          MAGISTRATE JUDGE PAYSON:  What is the issue,
21   Mr. Lindsay.
22          THE DEFENDANT:  Mr. Putney here never
23   wouldn't give me any type of information.  I mean,
24   before he even looked at my discovery, he wouldn't talk
25   to the U.S. Attorney.  He wouldn't talk on behalf of me.
```

```
 1                    USA V. D. LINDSAY
 2    I haven't seen him.  No type of motion to put in, any
 3    type of arguments to put in.  He is not --
 4               MAGISTRATE JUDGE PAYSON:  Well, let me just
 5    address a couple of things because I think you may have
 6    a misimpression about where we are with the case.  There
 7    has been no indictment.  It's pending on a Complaint.
 8    Motions, the time for filing motions doesn't happen
 9    until there has been an indictment.  Typically in any
10    case, and particularly in a case where there are a lot
11    of defendants, the government does indicate a
12    willingness to consider plea offers and the government
13    fairly frequently -- and the government, quite
14    frequently, takes the position that plea negotiations
15    will be more favorable for defendants if they don't go
16    forward with their detention hearing.
17               Now, the defendant has a legal right to have
18    a detention hearing.  But the government does have the
19    right to condition plea offers on a defendant not going
20    forward with a detention hearing.  So it may seem to
21    someone who is less familiar with the rules and the
22    practice that the first thing that should happen is a
23    decision about release or detention, and you're
24    certainly entitled to a hearing.  And if you want one
25    today, we'll go forward with it.  But the government
```

1                    USA V. D. LINDSAY
2    does sometimes say, well, there are consequences to
3    that.  And if you decide to go forward with a detention
4    hearing, then a certain plea may not be offered to you.
5    So a good attorney is going to make sure that you
6    understand the consequences of that and don't go and
7    counsel you about not acting so quickly that you lose an
8    opportunity that you might have if you took some time to
9    negotiate.  So it's not unusual for the government to
10   say we're open to negotiations.  It may seem early to
11   you in the case, but that is not an unusual posture to
12   take in the case.
13            As far as motions, it's too early.  Even if
14   motions were filed, I would say this isn't the time for
15   motions.  There will be a time for motions down the road
16   after everybody has a chance to review all of the
17   discovery.  You know, if and when there is an
18   indictment, then that gives rise to certain rights and
19   one of them is the right to file motions.
20            THE DEFENDANT:  Okay.
21            MAGISTRATE JUDGE PAYSON:  So that is where
22   we are.  You need to make a decision about whether you
23   want to go forward with a detention hearing.  I'm not
24   sure what the negotiations have been and I'm not allowed
25   to get involved in plea negotiations.

```
 1                     USA V. D. LINDSAY
 2              THE DEFENDANT:  Yes, I do.
 3              MAGISTRATE JUDGE PAYSON:  I generally do not
 4   allow or I don't grant somebody's application for a new
 5   lawyer when they come in and say, "I'm having problems
 6   with a lawyer."  I say, "We're going to take time.  I
 7   want you guys to talk about the issues, listen to one
 8   another, see if you can work it out."
 9              Here, as you know, number one, there are a
10   lot of defendants.  And so, as a consequence, even if I
11   were to give you a new attorney, it would take time to
12   find a new attorney because there are a lot of attorneys
13   that are already claimed in this case, assigned to other
14   defendants.  A new attorney would want to, you know,
15   take a little time to get up to speed, make sure he or
16   she understands what's going on so that you have the
17   benefit of his or her advice.  So, you know, that would
18   entail some delay if you wanted a new attorney, even if
19   I were to agree with you.  So do you know how you --
20   what you want to do?
21              THE DEFENDANT:  I would like to have my
22   detention hearing today.
23              MAGISTRATE JUDGE PAYSON:  You would like to
24   have your detention hearing today.
25              THE DEFENDANT:  Yes.
```

```
 1                       USA V. D. LINDSAY
 2               MAGISTRATE JUDGE PAYSON:  And, Mr. Putney,
 3   you're prepared to go forward.
 4               MR. PUTNEY:  Yes.
 5               MAGISTRATE JUDGE PAYSON:  So you want to go
 6   forward.
 7               THE DEFENDANT:  Yes.
 8               MAGISTRATE JUDGE PAYSON:  And if you have
 9   issues in the future, and, again, it's not uncommon for
10   defendants, particularly those that are detained, to
11   experience some frustrations and questions about what's
12   going on.  In the first instance, you need to discuss
13   that with your lawyer, see if you can work it out.
14   Okay.
15               THE DEFENDANT:  Okay.
16               MAGISTRATE JUDGE PAYSON:  All right.  Could
17   you ask Mr. Marangola to come back in.
18               (Whereupon, AUSA Marangola re-entered the
19   courtroom.)
20               Okay.  I think we're ready to proceed with
21   the hearing.
22               MR. MARANGOLA:  Okay.
23               MAGISTRATE JUDGE PAYSON:  Okay.  Mr.
24   Lindsay, if you would affirm for me on the record that
25   you do wish to go forward with your hearing today.
```

```
 1                     USA V. D. LINDSAY
 2            THE DEFENDANT:  Yes, I do, ma'am.
 3            MAGISTRATE JUDGE PAYSON:  And with your
 4   representation by Mr. Putney.
 5            THE DEFENDANT:  Yes, I do.
 6            MAGISTRATE JUDGE PAYSON:  Okay.  Thank you.
 7            Go ahead.
 8            MR. MARANGOLA:  Thank you, Judge.  I'd, just
 9   in terms of putting matters also on the record, I spoke
10   to Mr. Putney previously regarding certain options that
11   would -- that would not be available to the defendant if
12   he desired to go forward with his detention hearing.  My
13   understanding is that he has spoken to Mr. Lindsay about
14   that and Mr. Lindsay is aware of those, the consequences
15   of those decisions, and, nonetheless, wishes to proceed
16   with his detention hearing today.
17            MAGISTRATE JUDGE PAYSON:  And that is true,
18   right, Mr. Lindsay.
19            THE DEFENDANT:  Yes.
20            MR. MARANGOLA:  And then I am prepared to
21   proceed.
22            MAGISTRATE JUDGE PAYSON:  Okay.  Go ahead.
23            MR. MARANGOLA:  So the government is moving
24   for detention of the defendant pursuant to the Bail
25   Reform Act, and specifically under Title 18 U.S.C.
```

```
1                    USA V. D. LINDSAY
2    Section 3141(f)(1)(A), in that the defendant is charged
3    with an violation of 922(g)(1), it's a crime of
4    violence; under (f)(1)(B) in that the maximum sentence
5    for the 924(c) offense, which he is also charged with,
6    is life imprisonment; as well as the narcotics
7    violation, and under 3142 (f)(1)(C), which is that the
8    drug charge carries a maximum sentence of 10 years or
9    more.  The government is also moving, pursuant to
10   3142(f)(2)(A), in that there is a serious risk that the
11   defendant would flee.  The government would ask the
12   Court apply the presumption of dangerousness under
13   3142(e), and I'd also ask the Court consider the danger
14   to the community caused by illegal narcotics trafficking
15   as set forth in the Leon case.  And, in particular, the
16   dangers caused by street-level narcotics trafficking and
17   armed street-level narcotics trafficking.
18              Moving into the G factors.  The nature and
19   circumstances of the offense and whether this offense
20   includes an or involves a crime of violence, a
21   controlled substance offense, or a firearm.  These
22   offenses involve all three.  He is charged with a crime
23   of violence, multiple controlled -- not multiple.  I
24   guess cocaine and cocaine base are, under the federal
25   law, still different controlled substances and firearms.
```

1               USA V. D. LINDSAY
2               The case against the defendant, Judge,
3   moving into the weight of the evidence, is essentially
4   what the Court has before it is a mid-level narcotics
5   trafficker who was obtaining 31 gram quantities of
6   cocaine from Timothy Jackson, who is his supplier.  He
7   was then cooking those quantities of cocaine into
8   cocaine base or distributing them as cocaine powder and
9   selling them to other individuals.  The evidence in the
10  case includes surveillance of the defendant meeting with
11  Jackson, controlled purchases of cocaine directly from
12  the defendant, which are recorded, and also surveilled
13  by law enforcement, as well as a search warrant that was
14  executed at the defendant's residence during which law
15  enforcement seized a loaded handgun that had a defaced
16  serial number.  The defendant, after he was arrested at
17  his residence, which is also where he engaged in the
18  sales to the informant, the defendant was advised of and
19  waived his Miranda rights and admitted to possessing the
20  firearm that was at the residence, having it for
21  protection, and I believe he made some admissions in
22  general regarding drug trafficking, although he didn't
23  want to get into specifics.
24              So in addition to that, your Honor, the
25  Court is aware there was a take down of this case on

1                USA V. D. LINDSAY

2  January 17th.  And during that take down, law

3  enforcement executed a search warrant, not just at the

4  defendant's residence, but at the residence of Mr.

5  Jackson.  And at his residence, the buy money from one

6  of the controlled purchases of narcotics, I believe it

7  was 62 grams, two 31 quantities, sold by the defendant

8  to the informant the day before the take down on January

9  16th, 2017, the buy money that was recorded and

10 memorialized by law enforcement was recovered, some of

11 that buy money was recovered at Mr. Jackson's residence

12 the next date during the search warrant at 45 Wilmont.

13           That is a summary, Judge, of the weight of

14 the evidence and the nature and circumstances of the

15 offense charged.

16           With respect to the defendant's history and

17 characteristics, according to the pretrial report, it

18 looks like the defendant has, I think it's three

19 separate felony adult convictions, plus a YO

20 adjudication for a felony narcotics -- I'm sorry, felony

21 firearms plea.  He has been committing narcotics and

22 firearms crimes in this community for, it looks like,

23 over 25 years.  He had his YO for a firearm in '91.  He

24 has had probation sentences that were revoked and he was

25 sentenced to jail.  He has had bench warrants on his

```
 1                    USA V. D. LINDSAY
 2   prior convictions.
 3              His first adult felony was also for
 4   possession of a weapon, that was in '95.  He was
 5   sentenced on his first drug felony in 1997.  He then had
 6   another felony charge in '97 that was reduced to a
 7   misdemeanor that he committed while charges were
 8   pending.  He had his first federal conviction in 2001,
 9   some 23 years ago.  He was convicted of being a felon in
10   possession of a firearm, exactly the same charge, one of
11   the charges that he is here today some 23 years later.
12   After serving his first federal prison sentence, he was
13   placed on supervised release and violated that release
14   by committing new conduct and failing to abide by the
15   rules of the residential reentry center and was
16   sentenced to another term of imprisonment.  He had
17   another felony drug arrest that was reduced to a
18   misdemeanor, along with, it looks like, three other
19   felony drug charges that were reduced to misdemeanors
20   and he got various jail sentences - 90 days in jail, six
21   months in jail, and one year in jail.  And then another
22   felony drug charge reduced to a misdemeanor and he was
23   sentenced to probation.  That ended in 2018 and he is
24   back before the Court at 50-years-old on another illegal
25   firearms and narcotics arrest.  He has no employment
```

1                    USA V. D. LINDSAY
2    over the last eight years, according to the pretrial
3    report.  And I don't believe there is any, although he
4    is a life-long resident of the City of Rochester, I
5    don't believe there are any other factors supporting
6    release in his history and characteristics.
7              The nature and seriousness of the danger to
8    the defendant.  Judge, the defendant is a repeated
9    ongoing seller of cocaine in the community.  He has had
10   multiple prior felony firearms arrests and convictions.
11   And again, at 50-years-old, after having been sentenced
12   to local jail sentences, misdemeanors, state prison and
13   federal prison, he has continued to re-engage in the
14   identical behavior of drug sales and illegal firearms
15   possession.  And I would submit to the Court, based on
16   that recidivism behavior, recidivist behavior, that has
17   been going on some 20-plus-years, that he has given
18   every indication that he will continue to break the law
19   if released, and that he is more of a danger because of
20   that repeated identical criminal activity.
21             I would note that the pretrial report also
22   recommends detention, noting that he has committed
23   multiple offenses while others are pending.  He has had
24   bench warrants.
25             And I think that's it, Judge.

```
 1                    USA V. D. LINDSAY
 2              MAGISTRATE JUDGE PAYSON:  Okay.  Go ahead.
 3              MR. PUTNEY:  Your Honor, I would ask my
 4   client what his plan would be should he be released?
 5              THE DEFENDANT:  One, to re-seek employment
 6   and really looking forward to coaching my son and
 7   something simple, just simple.  Maintaining a job.  I
 8   have not had a job within the past years.  I haven't had
 9   a job within the past two years.  A lot of it having to
10   do with having a hernia.  But I can maintain employment.
11   But the main thing, I'm definitely looking forward to
12   employment, and I love coaching youth football and
13   basketball.  That really sums it up.
14              MAGISTRATE JUDGE PAYSON:  Thank you.
15              MR. PUTNEY:  Where would you live if you
16   were released?
17              THE DEFENDANT:  With my brother.
18              MAGISTRATE JUDGE PAYSON:  Why don't you make
19   a proffer instead of having the defendant make
20   statements.
21              No, no, I would like to hear from counsel.
22              MR. PUTNEY:  He would live with his brother,
23   Kenneth.
24              And what is his address.
25              THE DEFENDANT:  690.
```

1                    USA V. D. LINDSAY
2              MR. PUTNEY:  He is at 690 Seward Street in
3    the City of Rochester.
4              And have you talked to him about that?
5              THE DEFENDANT:  Yes.
6              MR. PUTNEY:  And he has talked with his
7    brother and he would be willing to take him in there.
8              MAGISTRATE JUDGE PAYSON:  Anything else?
9              MR. PUTNEY:  No, your Honor.
10             MAGISTRATE JUDGE PAYSON:  I will reserve
11   decision and give further consideration to the
12   information that has been presented to the Court.  Let
13   me go ahead and set another court date at this juncture
14   with respect to the underlying charges.  I'll let you
15   know when I'm ready to render a decision on this motion
16   for detention.
17             Mr. Marangola, I assume that you have
18   provided voluntary discovery?
19             MR. MARANGOLA:  I have, Judge, yes.
20             MAGISTRATE JUDGE PAYSON:  All right.  And
21   Mr. Putney, what would you like to do, a status
22   conference, a preliminary hearing.
23             MR. PUTNEY:  Status conference for starts.
24             MAGISTRATE JUDGE PAYSON:  Okay.  And what
25   time frame are you looking for.

```
 1                    USA V. D. LINDSAY
 2              MR. PUTNEY:  Maybe two weeks out.
 3              MAGISTRATE JUDGE PAYSON:  All right.  How
 4   about 9:15 on April 4th.  Would that work.
 5              MR. MARANGOLA:  That's fine with me, Judge.
 6              MR. PUTNEY:  That works for me.
 7              MAGISTRATE JUDGE PAYSON:  We'll put this on
 8   for 9:15, April 4th for status.
 9              Mr. Putney, are you asking for an interest
10   of justice exclusion for between today and the 4th?
11              MR. PUTNEY:  Yes, I am.
12              MR. MARANGOLA:  Government joins that
13   request.
14              MAGISTRATE JUDGE PAYSON:  Joint request to
15   exclude time in the interest of justice is granted.
16   Time is excluded between today and April 4th under 18
17   U.S.C. Section 3161(h)(7).  I find Mr. Lindsay's
18   interest, the government's interest and the public's
19   interest in both a speedy indictment and speedy trial
20   are outweighed by Mr. Lindsay's interest to have enough
21   time to continue review of discovery, to discuss that
22   with counsel, to discuss his options, including whether
23   to ask for a preliminary hearing.  And we'll reconvene
24   on the 4th of April.  Okay.
25              Thank you very much.  Have a nice day.
```

```
 1                    USA V. D. LINDSAY
 2                  CERTIFICATE OF REPORTER
 3
 4     I certify that the foregoing is a correct transcript
 5  of the record to the best of my ability of proceedings
 6  transcribed from the audio in the above-entitled matter.
 7
 8  S/ Karen J. Clark,  RPR
 9  Official Court Reporter
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```